# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL VASQUEZ, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. CIV-16-1461-STE |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.    PROCEDURAL BACKGROUND

The Social Security Administration denied Plaintiff's applications for disability insurance benefits and supplemental security income initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an

unfavorable decision. (TR. 119-126). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 10, 2013, the alleged disability onset date. (TR. 121). At step two, the ALJ determined Mr. Vasquez suffered from the severe impairment of diabetes. (TR. 121). At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 123).

At step four, the ALJ concluded that Mr. Vasquez had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b). (TR. 124). With this RFC, the ALJ found that Plaintiff was not capable of performing his past relevant work. (TR. 125). However, because the ALJ concluded that Mr. Vasquez could perform the full range of light work, he proceeded to assess the issue of disability utilizing the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). *See* Social Security Ruling 83-11, Titles II And XVI: Capability to Do Other Work--the Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252 at (1983) (allowing application of the Grids when the claimant can

perform all of the exertional demand at a given level of exertion, i.e.—a full range of "light" work).

Because Mr. Vasquez was considered a "younger individual," with a limited education, no transferrable work skills, and was deemed capable of performing a full range of light work, the applicable Medical-Vocational Rule was 202.18, which directed a finding of "not disabled." *See* 20 C.F.R. Part 404, Subpart P, Appendix 2; Rule 202.18. The ALJ applied this rule, and concluded that Mr. Vasquez was not disabled. (TR. 125-126).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in the evaluation of impairments involving Plaintiff's left shoulder, diabetic neuropathy, and lower back.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE CONSIDERATION OF VARIOUS IMPAIRMENTS

Plaintiff alleges error in the evaluation of impairments involving his left shoulder, lower back, and diabetic neuropathy. Specifically, Mr. Vasquez contends that the ALJ erred: (1) at step two in concluding that these impairments were not severe and (2) at step four in failing to consider the impairments when formulating the RFC.[1] The Court concludes that any error at step two was harmless, but the ALJ did err at step four in failing to consider the full impact of the impairments.

### A. Step Two

"At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'" *Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004). *See* 20 C.F.R. §§ 404.1523 & 416.923. Mr. Vasquez has alleged disability based on a left shoulder impairment, a low back impairment, and diabetic neuropathy. According to Plaintiff, the ALJ erred at step two in concluding that these impairments were not severe. (ECF No. 17:3-5). But any error at step two became harmless when the ALJ determined that Mr. Vasquez suffered from at least one severe

---

[1] Mr. Vasquez also argues that any error in the ALJ's evaluation of Plaintiff's impairments was not harmless because the ALJ obtained testimony from a vocational expert (VE) regarding other jobs that Plaintiff could perform and the VE's testimony had been based on an unreliable source of information. (ECF No. 17:12-14). But the Court need not address this argument because the ALJ never relied on the VE's testimony—instead finding that Mr. Vasquez was not disabled based on application of the Grids. *See* TR. 125-126.

impairment and proceeded to the next step of the evaluation sequence. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

  **B.** **Step Four**

Alternatively, Plaintiff argues that the ALJ erred at step four by failing to consider the three impairments when assessing the RFC. (ECF No. 17:5-11). In support, Mr. Vasquez points to significant probative evidence documenting the impairments which the ALJ allegedly ignored. (ECF No. 17:5-11). Plaintiff's argument has merit.

    **1.** **The ALJ's Duty at Step Four**

At step four, the ALJ must "consider the combined effect of all of the [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of such severity" as to warrant an award of benefits. 42 U.S.C. § 423(d)(2)(B); *see also Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013) (explaining that when "assessing [a] claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe* ").

    **2.** **Medical Evidence From Treating Sources**

The record reveals treatment for Mr. Vasquez' left shoulder pain, a lumbar impairment, and diabetic neuropathy between November 2011 and July 2015.

**Medical Evidence Relating to**
**Plaintiff's Left Shoulder**

From May 3, 2011 to August 21, 2012, Plaintiff was treated by professionals at McBride Clinic for a left shoulder injury. *See* TR. 457-518 (Exhibit 2F). May 3, 2011 was Plaintiff's first appointment after having been injured at work, in an accident which

5

involved two cases of beer falling on him. (TR. 514-518). At that appointment, Mr. Vasquez was diagnosed with left shoulder strain. (TR. 516). One week later, Plaintiff was still suffering left shoulder strain with AC arthrosis. (TR. 513). On May 25, 2011, Plaintiff reported having "painful popping" in his left shoulder, and a physician's assistant diagnosed him with left shoulder pain. (TR. 508-509). On June 9, 2011, orthopedic surgeon Dr. Warren Low: (1) examined Plaintiff and noted a restricted range of motion and tenderness in Plaintiff's left shoulder and (2) ordered an MRI of the shoulder. (TR. 506-507).

The left shoulder MRI revealed:

- a moderate supraspinatus tendinosis,
- moderate tendinosis in the long head of the lateral biceps tendon,
- minimal AC arthrosis,
- minimal subacromial-subdeltoid bursitis,
- mild tears of the superior and mid-posterior glenoid labrum, and
- severe fatty atrophy of the teres minor muscle.

(TR. 504-505). On July 5, 2011, Mr. Vasquez attended physical therapy for his left shoulder. (TR. 497-498). The physical therapy report showed that Plaintiff was tender to palpation in the left shoulder with a reduced range of motion. (TR. 497-498).

On August 2, 2011, Dr. Low examined Plaintiff for a re-evaluation of his left shoulder. (TR. 493). Plaintiff still complained that his shoulder "snap[ped], pop[ped], and grind[ed]" and examination of the left shoulder confirmed Plaintiff's complaints. (TR.

493). On November 23, 2011, Dr. Low performed arthroscopic surgery on Plaintiff's left shoulder which had been diagnosed with chronic impingement syndrome. (TR. 489-491). Following the surgery, Dr. Low sent Plaintiff to physical therapy to increase his strength and decrease pain in the left shoulder. (TR. 486-487).

On January 3, 2012, Plaintiff complained that his left shoulder pain was worse than before the surgery and a physician's assistant in Dr. Low's office confirmed Plaintiff's reduced range of motion and pain upon manipulation. (TR. 485). On March 8, 2012, Dr. Low reported that Plaintiff's left shoulder was stiff in all directions and that he had developed adhesive capsulitis and calcific tendonitis. (TR. 483). Dr. Low's course of treatment was to manipulate plaintiff's shoulder under general anesthesia. (TR. 480-483).

On April 12, 2012, Plaintiff underwent a "Functional Capacity Evaluation" at McBride Orthopedic Hospital. (TR. 469-478). As part of the evaluation, it was noted that Plaintiff had no ability to reach overhead, and should never engage in any reaching activity or lifting anything overhead. (TR. 468, 471, 473). On April 24, 2012, Dr. Low noted that Plaintiff had quit physical therapy because something in his shoulder "popped," and that Plaintiff was "extremely stiff" upon examination with "almost no internal or external rotation. (TR. 465). Dr. Low diagnosed Plaintiff with a heterotopic bone formation and after consulting another physician, Dr. Low stated that no matter the course of treatment, Mr. Vasquez' condition might not improve. (TR. 466). Even so, Dr. Low wanted to attempt one final procedure on Plaintiff's left shoulder involving a diagnostic video

7

arthroscopy with a subacromial decompression and possible intraarticular capsular release. (TR. 466).

A June 11, 2012 CT of Plaintiff's shoulder showed acromioplasty and partial resection of the distal clavicle, small calcifications adjacent to the supraspinatus tendon, mild arthrosis of the glenohumeral joint and osteopenia of the humeral head. (TR. 460-461). Dr. Low released Plaintiff from his care on August 21, 2012. (TR. 457-458). At that time, Dr. Low noted that the diagnostic video arthroscopy had not been successful in increasing Plaintiff's range of motion. (TR. 457). Upon examination, Dr. Low noted that Plaintiff's shoulder was "quite stiff" with only 50% internal and external range of motion. (TR. 457). Dr. Low informed Plaintiff that further surgery would involve a high risk with a possibility of no improvement. (TR. 458). Dr. Low released Mr. Vasquez to light duty work with restrictions on his left upper extremity. (TR. 458).

On April 4, 2012, after having been homeless for approximately two years, Plaintiff began trying to re-establish medical care and manage his diabetes. (TR. 559-562). At that time, Plaintiff complained of left shoulder pain, which he had been experiencing for 3 years. (TR. 556). Upon examination, Dr. Zummera Bhatti noted that Plaintiff was unable to perform the "Hawkins test" which tests for mobility and range of motion in one's shoulder. *See* TR. 557.[2]

---

[2] http://www.journalofphysiotherapy.com/article/S1836-9553(11)70061-3/pdf

### Medical Evidence Relating to
### Plaintiff's Lower Back

On May 25, 2011, following his job-related injury, Plaintiff reported having low back pain when walking and a physician's assistant diagnosed Mr. Vasquez with low back pain. (TR. 508). On June 9, 2011, Dr. Low examined Plaintiff and: (1) noted that x-rays of Plaintiff's lumbar spine showed degenerative changes at L4-L5 and (2) ordered an MRI of Plaintiff's lumbar spine. (TR. 507). The lumbar MRI revealed mild degenerative disc bulging throughout the lumbar spine contributing to minimal foraminal narrowing at the lower lumbar levels. (TR. 500-501). On July 5, 2011, Mr. Vasquez attended physical therapy for his low back pain. (TR. 497-498). The physical therapy report showed that Plaintiff had reduced range of motion in his low back. (TR. 497-498).

### Medical Evidence Relating to
### Plaintiff's Diabetic Neuropathy

On June 9, 2011, Dr. Warren Low examined Plaintiff following complaints of numbness in his left great toe. (TR. 506). On June 23, 2011, Dr. Low noted that Plaintiff was still having difficulty extending his left great toe and consequently, the doctor ordered an EMG nerve conduction study test of Plaintiff's left lower extremity. (TR. 499). On July 12, 2011, Dr. Low noted that the nerve conduction study test revealed the presence of mild peripheral neuropathy, most likely secondary to Plaintiff's diabetes. (TR. 495).

On April 4, 2014, Plaintiff complained of "painful pins and needles sensation" in both feet and Dr. Bhatti diagnosed Mr. Vasquez with diabetic neuropathy. (TR. 559-561). Dr. Bhatti continued treating Plaintiff's diabetic neuropathy and prescribed gabapentin.

(TR. 536, 538, 542). On May 13, 2015, records noted that Plaintiff was still being treated for diabetic neuropathy and taking gabapentin. (TR. 581). Throughout June and July 2015, Dr. Priya Samant treated Plaintiff for diabetic neuropathy. (TR. 591-597).

### 3.     Medical Evidence From Consultative Examinations

On November 19, 2012 and January 18, 2014, Plaintiff underwent two consultative examinations ordered by the Social Security Administration. (TR. 519-526, 528-534). On November 19, 2012, Dr. Robin Hall examined Plaintiff and concluded that he:

- was positive for foot pain,
- was positive for occasional tingling in his feet,
- had possible diabetic neuropathy,
- had reduced range of motion in all directions in his left shoulder, and
- had normal range of motion in his back, but was positive for pain in his lumbosacral spine with movement in all directions.

(TR. 519-524).

On January 18, 2014, Dr. Julie Wiley examined Plaintiff and concluded that he:

- had limited range of motion in his lumbosacral spine along with tenderness, muscle spasms, and pain when moving in all directions,
- had a positive bilateral straight leg raise test, in both the seated and supine positions,
- had an inability to perform heel or toe walking secondary to pain,
- ambulated with an antalgic gait with a left-sided limp, and
- had decreased range of motion in his left shoulder.

(TR. 528-534). Ultimately, Dr. Wiley assessed Plaintiff with chronic left shoulder pain, chronic low back pain, and diabetic neuropathy. (TR. 529).

### 4. The ALJ's Decision

At step two, the ALJ concluded that Plaintiff's left shoulder pain was "not severe." (TR. 123). In support of this finding, the ALJ stated:

> The claimant's left shoulder pain is found to be non-severe. The record shows a history of unspecified surgery. There is no medical evidence of record in connection to the surgery. There is no treatment for the shoulder in the last several years.

(TR. 123). As alleged by Plaintiff, the ALJ's findings are simply inaccurate. As discussed, the record contains significant treatment for Plaintiff's left shoulder for over one year by Dr. Low, who performed 3 surgical procedures on Plaintiff's left shoulder, ordered an MRI, a CT scan, and sent Plaintiff to physical therapy. *See supra*. But with the exception of a single sentence, however, the ALJ failed to recognize any of Dr. Low's treatment in his summary of the medical evidence. The entirety of the ALJ's acknowledgement of Plaintiff's treatment for his left shoulder injury was: "The claimant underwent manipulation of the left shoulder on March 28, 2012." (TR. 121). Not only did the ALJ fail to acknowledge Dr. Low's treatment, he failed to recognize any work-related limitations which had been found regarding Plaintiff's inability to lift or reach overhead. (TR. 458, 468, 471, 473). Additionally, although records from Drs. Low, Bhatti, and Samant document restrictions in Plaintiff's low back and treatment for diabetic neuropathy, the ALJ makes no mention of these impairments or any related treatment. (TR. 119-126). The ALJ's failure to discuss this evidence is error.

11

In reaching his conclusion that Plaintiff could return to a full range of light work, the ALJ gave "great weight" to the opinions from consultative examiners Drs. Hall and Wiley. (TR. 124-125). The ALJ was entitled to accord the opinions "great weight," but a problem arises because a noticeable conflict exists between the ALJ's reliance on the opinions and the RFC. Together, the State Agency physicians had noted that Mr. Vasquez:

- was positive for foot pain, which prevented him from performing the heel-toe walking test,

- was positive for tingling in his feet,

- had reduced range of motion in all directions in his left shoulder,

- had limited range of motion in his lumbosacral spine along with pain when moving in all directions, tenderness, and muscle spasms, and

- suffered from diabetic neuropathy, chronic left should pain, and chronic low back pain.

(TR. 519-524, 528-534). The ALJ acknowledged these findings in his summary of the medical evidence, did not expressly reject them, and ultimately accorded the opinions "great weight." (TR. 122-125). Even so, the RFC reflects no limitations relating to Plaintiff's left shoulder, low back, or diabetic neuropathy. (TR. 124). The ALJ's failure to explain his clear disregard of these limitations which could affect Mr. Vasquez' ability to perform a full range of light work was error. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (finding error in ALJ's failure to discuss implicit rejection of opinion, noting "Although the ALJ mentioned Dr. Reddy's report, he did not discuss Dr. Reddy's diagnoses of polyneuropathy and kyphosis or explain why he rejected them as a source

of pain that limits Mrs. Carpenter's ability to do work activities, such as walking, standing, sitting, lifting, etc.").

## VI. SUMMARY

In sum, the Court concludes that the ALJ simply ignored evidence related to Plaintiff's left shoulder impairment, low back pain, and diabetic neuropathy. Treating sources and consultative physicians opined that these impairments caused work-related limitations which are incompatible with Mr. Vasquez' ability to perform a full range of light work. *See supra*. Accordingly, remand is appropriate for reconsideration of the evidence as outlined above, related to the three impairments.

### ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings.

ENTERED on August 30, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE